U.S. DISTRICT COURT
EASTERN DISTRICT-WI
**FILED**

'09 MAY 26 A9 :24

JON W. SANFILIPPO
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

Plaintiff,

v.

MICHAEL FEKER
formerly known as Mohammad Daghighfekr,

Defendant.

Case No. **09 CR-138**

---

### PLEA AGREEMENT

---

1.      The United States of America, by its attorneys, Michelle L. Jacobs, Acting United States Attorney for the Eastern District of Wisconsin, and Matthew L. Jacobs, Assistant United States Attorney, and the defendant, Michael Feker, who was previously known as Mohammad Daghighfekr, individually and by his attorney, Michael G. Goller, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

#### CHARGES

2.      The defendant will be charged in a two-count criminal information that will be filed in conjunction with this plea agreement. The information charges the defendant with one count of filing a false federal income tax return for the year 2001, in violation of Title 26, United States Code, Section 7206(1) (Count One), and one count of structuring financial

transactions to avoid the filing of currency transaction reports (CTRs), in violation of Title

31, United States Code, Section 5324(a). The information also contains a forfeiture

provision requiring the defendant to forfeit $37,088 to the United States.

3. The defendant has read and fully understands the charges contained in the

information and fully understands the nature and elements of the crimes with which he has

been charged. Further, these charges and the terms and conditions of the plea agreement

have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to waive in open court his right to have this

matter prosecuted by indictment.

5. The defendant voluntarily agrees to plead guilty to the charges contained in the

information, which are set forth below.

**COUNT ONE**
(26 U.S.C. § 7206(1))

**THE UNITED STATES ATTORNEY CHARGES**:

1. On or about October 17, 2002, in the State and Eastern District of Wisconsin,

**MICHAEL FEKER**,
formerly known as Mohammad Daghighfekr,

who was then married and a resident of Milwaukee, Wisconsin, did willfully make and subscribe a joint United States Individual Income Tax Return (Form 1040, hereinafter "return") for the calendar year 2001, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return Feker did not believe to be true and correct as to every material matter in that Feker indicated on the return that he and his wife had adjusted gross income (AGI) for 2001 of negative $69,118; taxable income

2

during 2001 of $0; and that their total federal tax due to the IRS for 2001 was $0, whereas, in fact, and as Feker well knew, he and his wife had adjusted gross income and taxable income substantially greater than reported on his 2001 tax return and that their total federal tax due to the IRS for 2001 was substantially greater than reported by Feker on the return.

All in violation of Title 26, United States Code, Section 7206(1).

## COUNT TWO
(31 U.S.C. § 5324(a))

**THE UNITED STATES ATTORNEY FURTHER CHARGES:**

2. During the period from approximately December 2002 though December 2003, in Milwaukee, in the State and Eastern District of Wisconsin,

**MICHAEL FEKER,**
formerly known as Mohammad Daghighfekr,

for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a), and the regulations promulgated thereunder, structured, and assisted in structuring, the deposit of approximately $37,088 in United States currency into accounts he maintained at banks in the Milwaukee area by making cash deposits to his accounts in amounts less than $10,000.

All in violation of Title 31, United States Code, Sections 5324(a)(3) and 5324(d) and Title 31, Code of Federal Regulations, Section 103.11.

6. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offenses charged in the information. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits to the following facts and that these facts establish his guilt beyond a reasonable doubt:

At all times relevant to this case and, in particular, during the years 2001 - 2003 and 2005, the defendant, Michael Feker, who was previously known as Mohammad Daghighfekr,

3

Case 2:09-cr-00138-LA    Filed 05/26/09    Page 3 of 20    Document 2

was married and a resident of Wauwatosa, Wisconsin. During this period, Feker was the owner and operator of restaurants in the Milwaukee area. During this entire period, he owned and operated IL Mito Restaurant on Virginia Street in Milwaukee. From November 2004 through 2005, he also owned and operated a second restaurant, Culinary Capital, Inc., which used the name Los Mitos Restaurant, on Jefferson Street in Milwaukee.

For the years 2001 through 2004, Feker operated IL Mito as a sole proprietorship and reported the income and expenses from the business on a Schedule C that accompanied his personal income tax returns (Forms 1040). For the year 2005, Feker converted IL Mito to a Sub-chapter S corporation, IL Mito, Inc., which is treated similar to a partnership for tax purposes. Accordingly, for 2005, the business reported its income and expenses on a Form 1120S. In turn, Feker and his wife, each of whom was a 50% owner of the business, reported the resulting income (or loss) from the business on the joint federal income tax return (Forms 1040) they filed for the year 2005.

For the years 2004 and 2005, Feker operated Culinary Capital (doing business as Los Mitos) as a Sub-Chapter S corporation. Feker and his wife were each 50% owners of the business and, therefore, reported the resulting income (or loss) from the business on the joint federal income tax returns (Forms 1040) they filed for the years 2004 and 2005.

The following is a summary of the gross receipts and income (or loss) Feker reported to the IRS from his restaurant businesses for the years 2001 - 2005, as well as Feker's adjusted gross income (AGI), taxable income, and total tax due (including any self-employment taxes) as reported on the joint individual income tax returns (Forms 1040) Feker and his wife filed with the IRS for those years. Each of these returns was accompanied by a declaration under the penalties of perjury indicating that Feker had examined the return and accompanying schedules, and that, to the best of Feker's knowledge and belief, the return was true, correct and complete.

|  | 2001 | 2002 | 2003 | 2004 | 2005 |
|---|---|---|---|---|---|
| Gross receipts IL Mito | $712,625 | $740,126 | $752,970 | $800,928 | $581,744 |
| Gross receipts Los Mitos | --- | --- | --- | $46,014 | $601,209 |
| Total gross receipts | $712,625 | $740,126 | $752,970 | $846,942 | $1,182,953 |
| Total business income (Loss) | ($44,853) | $55,621 | $315 | $58,099 | ($44,818) |
| Adjusted Gross Income | ($69,118) | ($17,029) | ($42,172) | $20,639 | $9,313 |

4

|  | 2001 | 2002 | 2003 | 2004 | 2005 |
|---|---|---|---|---|---|
| Taxable Income | $0 | $0 | $0 | $0 | $0 |
| Total Tax Due (Including self-employment tax) | $0 | $7,859 | $0 | $7,398 | $0 |

In January 2004, the IRS notified Feker that it would be auditing Feker's 2001 tax return. At that same time, the Wisconsin Department of Revenue notified Feker that it would be auditing Feker's sales and use taxes for the years 2000 - 2003.

As a result of the audit, as well as subsequent investigation by the Criminal Investigation Division of the IRS, the government identified substantial cash deposits during the years 2001 - 2003 to personal bank accounts maintained by Feker and his wife. During the same period, the cash deposits to Feker's business accounts accounted for less than 5% of the overall deposits. The following is a comparison of the cash deposits to Feker's personal accounts and his business accounts.

|  | 2001 | 2002 | 2003 | 2004 | 2005 |
|---|---|---|---|---|---|
| Gross deposits to business accounts | $877,967 | $893,946 | $885,683 | $1,133,913 | $1,534,629 |
| Total reported gross receipts | $712,625 | $740,126 | $752,970 | $846,942 | $1,182,953 |
| Total cash deposits to business accounts | $71,066 | $24,975 | $13,692 | $17,566 | $60,172 |
| Cash as percentage of deposits | 8.1% | 2.8% | 1.5% | 1.5% | 3.9% |
| Total cash deposits to personal accounts | $75,697 | $52,770 | $65,111 | $650 | $4,197 |

The cash deposited to Feker's personal bank accounts during the years 2001 - 2003 consisted of 176 separate deposits. After Feker was notified by the IRS that it would be auditing his 2001 tax return, there were only 9 additional cash deposits (totaling less than $5,000) to his personal bank accounts during 2004 and 2005.

5

In addition, the government identified cash expenditures by Feker for personal expenses during the years 2001 - 2005. These included approximately $25,000 in cash Feker paid to contractors in 2001 for the remodeling of his rental property; approximately $5,600 in cash (or using cashier's checks purchased with cash) Feker paid in 2005 for the tuition at a private school for his child; and a total of $5,400 in cash Feker claimed to have contributed to the operation of his business during the years 2001 - 2003. Despite these cash expenditures, an analysis of all of Feker's personal and business bank accounts revealed that during the years 2001 - 2005 Feker withdrew or received back less than $3,200 in cash from these accounts.

During the years 2002, 2003 and 2005, Feker received payments from his brother, Allan Feker, and his brother's businesses, U.S. Golf & Leisure and Rainbow Springs Golf Club, in the amounts of $7,000, $6,500, and $29,275.37 respectively. A representative of Allan Feker indicated to the IRS that these amounts were paid to Feker for consulting services and commissions. Feker did not report these payments as income on the tax returns he filed for the years 2002, 2003 and 2005. Feker identified himself as the vice president of Rainbow Springs Golf Club on a loan application he submitted in 2001 to obtain a mortgage for his home.

On this loan application, which Feker and his wife signed on August 3, 2001, he indicated that his gross monthly income was $9,166. This would result in an annual gross income of $109,992. On his 2000 and 2001 tax returns, however, Feker and his wife reported wages of only $7,523 in 2000 and no wages in 2001. Moreover, Feker reported Adjusted Gross Income in these years of -$13,160 and -$69,118, respectively.

Based on an analysis of all deposits to Feker's business and personal accounts, and eliminating deposits from non-taxable sources, including gifts from Feker's father, the IRS calculates that Feker fraudulently under reported his income for the years 2001 - 2003 and 2005 by approximately $176,648. This resulted in an under reporting of taxes for these years of $21,872. The defendant agrees that the amount by which he under reported his taxes for these years is more than $12,500 but less than $30,000.

*Count One: Filing a false tax return*

The charge in the information to which the defendant has agreed to plead guilty concerns the 2001 federal income tax return Feker filed with the IRS. This tax return was filed with the IRS on or about October 17, 2002. The return, which bears Feker's signature, contains a declaration under the penalties of perjury indicating that Feker had examined the return, including any accompanying statements and schedules and, to the best of his knowledge and belief, it was true, correct, and complete.

6

The return indicated that Feker and his wife had adjusted gross income during 2001 of negative $69,118 (-$69,118); that he and his wife had taxable income during 2001 of $0; and that their total federal tax due to the IRS for 2001 was $0. In fact, Feker's correct adjusted gross income for 2001 was approximately $29,430; his correct taxable income for 2001 was $12,530.52; and his correct tax due and owing to the IRS for 2001 was $10,042.68.

*Count Two: Structuring cash deposits*

Federal law requires financial institutions to file a Currency Transaction Report ("CTR") with the Internal Revenue Service for each transaction in currency, such as a deposit, withdrawal, exchange of currency or other payment or transfer by, through or to a financial institution, in excess of $10,000.

In December 2002, Feker obtained approximately $73,000 in currency after his father passed away. During the following 12 months, Feker deposited approximately $37,000 of this currency into accounts he maintained at financial institutions in the Milwaukee area. To avoid the filing of CTRs by these financial institutions, Feker structured his deposits by limiting the individual deposits to amounts less than $10,000.

This information is provided for the purpose of setting forth a factual basis for the defendant's plea of guilty. It is not a full recitation of the defendant's knowledge of or participation in this offense.

## PENALTIES

7. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: Count One: Three (3) years and $250,000; and Count Two: Five (5) years and $250,000. Each of the charges also carries a mandatory special assessment of $100.00. Count One has a maximum of one year of supervised release to follow any term of confinement. Count Two has a maximum of three years of supervised release to follow any term of confinement. The

7

defendant has also agreed to forfeit to the United States $37,088 representing the funds involved in the structuring offense charged in Count Two of the information.

8. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes, as well as the applicable sentencing guidelines, with his attorney.

## ELEMENTS

9. The parties understand and agree that to sustain the charge of filing a false federal income tax return in violation of 26 U.S.C. § 7206(1), as set forth in Count One of the information, the government must prove each of the following propositions beyond a reasonable doubt:

First, the defendant made or caused to be made the return in question;

Second, the defendant signed the return, which contained a written declaration that it was made under penalties of perjury;

Third, the defendant filed the return with the Internal Revenue Service;

Fourth, the return was false as to a material matter, as charged; and

Fifth, when the defendant made and signed the return, the defendant did so willfully and did not believe that the return was true, correct and complete as to every material matter.

10. The parties understand and agree that to sustain the charge of structuring financial transactions to avoid the filing of Currency Transaction Reports with the IRS, in violation of 31 U.S.C. § 5324(a), as charged in Count Two of the information, the government must prove each of the following propositions beyond a reasonable doubt:

8

Case 2:09-cr-00138-LA    Filed 05/26/09    Page 8 of 20    Document 2

First, that the defendant structured or assisted in structuring a transaction for the purpose of evading the currency transaction reporting requirements; and

Second, that the transaction involved one or more domestic financial institutions.

## SENTENCING PROVISIONS

11. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

12. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

13. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense charged in the information. The defendant acknowledges and agrees that his attorney, in turn, has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

14. The parties acknowledge and understand that, prior to sentencing, the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not

9

move to withdraw his guilty plea solely as a result of the sentencing court's determination of defendant's criminal history.

## Sentencing Guidelines Calculations

15. The parties acknowledge, understand, and agree that the sentencing guidelines calculations included in this agreement represent the positions of the parties on the appropriate sentence range under the sentencing guidelines. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

16. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offenses to which defendant is pleading guilty.

17. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual §§ 2T1.1and 1B1.3(a)(2), the sentencing court will consider all conduct violating the tax laws unless the evidence demonstrates that the conduct is clearly unrelated,

10

even if the relevant conduct is not the subject of the offense to which defendant is pleading guilty, and will use the total amount in calculating the sentencing guidelines range.

18.    For purposes of determining the defendant's offense level under the sentencing guidelines for the offense charged in Count One, the defendant and his attorney acknowledge and agree that, based upon the information presently available, the government is able to prove that the tax loss associated with the defendant's criminal conduct charged is more than $12,500 but less than $30,000.

## Base Offense Level

19.    The parties acknowledge and agree that, based on their agreement that the tax loss applicable to the defendant's conduct is more than $12,500 but less than $30,000, the parties will recommend to the sentencing court that the applicable base offense level for the offense charged in Count One is 12, as determined under Sentencing Guidelines Manual § 2T4.1(D).

20.    The parties acknowledge and agree that the offense level for the offense charged in Count Two is 6, as determined under Sentencing Guidelines Manual § 2S1.3(b)(3).

## Specific Offense Characteristics

21.    The parties agree to recommend to the sentencing court that no adjustment for any specific offense characteristics is applicable to the defendant's relevant conduct in this case.

11

## Grouping Rules

22.     The parties acknowledge and agree that pursuant to the rules applicable to Multiple Counts, which are found in Part D of Chapter 3 of the Sentencing Guidelines Manual, the defendant's offense level for the offense charges in Count One should be increased 1 level because the offenses to which the defendant will plead guilt are not grouped and the offense level for Count Two is 5 to 8 levels less serious that the offense level for Count One.

## Acceptance of Responsibility

23.     The government agrees to recommend a two-level decrease for acceptance of responsibility, as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility.

## Sentencing Recommendations

24.     Both parties reserve the right to apprise the district court and the probation office of any and all information that might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense, as well as any and all matters that might constitute aggravating or mitigating sentencing factors.

25.     The parties agree to recommend a split sentence, as contemplated bu Sentencing Guidelines Manual § 5C1.1(d)(2), of four (4) months imprisonment to be followed by four (4) months of home confinement, which falls within the applicable sentencing guideline range of 8 to 14 months, as calculated above. The defendant reserves

12

the right to argue to the sentencing court that, based on the defendant's medical condition, family circumstances and the other factors identified in 18 U.S.C. § 3553(a), he be allowed to serve his period of imprisonment in a facility other than a federal prison, such as a halfway house of community correctional facility.

## Court's Determinations at Sentencing

26. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 7 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

27. The parties acknowledge, understand, and agree that the defendant may not move to withdraw his guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

28. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable upon entry of the judgment

13

of conviction. The defendant agrees not to request any delay or stay in payment of any and all financial obligations.

## Special Assessment

29. The defendant agrees to pay the special assessments in the amount of $200 prior to or at the time of sentencing.

## Forfeiture

30. The defendant agrees to pay over and forfeit to the United States the sum of $37,088, which represents the sum money involved in the structuring offense charged in Count Two of the information and is, therefore, subject to forfeiture as indicated in the Forfeiture Notice of the information. The defendant agrees to pay this sum prior to sentencing by certified check payable to the United States Treasury. The defendant agrees to the forfeiture of these funds and to the immediate entry of a preliminary order of forfeiture. The defendant agrees that he has an interest in each of the listed properties.

## DEFENDANT'S WAIVER OF RIGHTS

31. In entering this agreement, the defendant acknowledges and understands that in so doing he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

    a.    If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

14

b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

32. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights.

33. The defendant acknowledges and understands that he will be adjudicated guilty of the offenses to which he will plead guilty and thereby may be deprived of certain rights,

15

including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

34. The defendant knowingly and voluntarily waives all claims he may have based upon the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

35. The defendant acknowledges that, in consultation with his attorney, he previously executed a waiver of the statute of limitations, as well as an extension of that waiver, for the offenses charged in the information and that he knowingly and voluntarily waives any claim or objection he may have based on the statute of limitations for the offenses charged in the information.

36. Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, and (3) ineffective assistance of counsel.

16

### Further Civil or Administrative Action

37.     The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

### GENERAL MATTERS

38.     The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

39.     The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

40.     The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of his conviction.

### Further Action by Internal Revenue Service

41.     Nothing in this agreement shall be construed so as to limit the Internal Revenue Service in discharging its responsibilities in connection with the collection of any additional

17

tax, interest, and penalties due from the defendant as a result of the defendant's conduct giving rise to the charge alleged in the information.

42. The defendant agrees to transmit the original records, or copies thereof, which he has in his possession or under his control, to the Examination Division of the Internal Revenue Service so that the Examination Division of the Internal Revenue Service can complete a civil audit of the defendant. The defendant agrees to provide any additional books and records he has in his possession or under his control which may be helpful to the Examination Division of the Internal Revenue Service to complete its civil audit of defendant.

### EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

43. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant

18

understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

44. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

19

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 5/18/09

MICHAEL FEKER
Defendant

I am the defendant's attorney. I have carefully reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 5/18/09

MICHAEL G. GOLLER
Attorney for Defendant

For the United States of America:

Date: 5/26/09

MICHELLE L. JACOBS
Acting United States Attorney

Date: 5/21/2009

MATTHEW L. JACOBS
Assistant United States Attorney

20